Robert E. BRYANT, Jr., Appellant,

v.

Robert P. FRANK, John Treff, and Donald E. Propps, Respondents.

No. WD 40584.

Missouri Court of Appeals, Western District.

Feb. 28, 1989.

Michael W. Manners, Independence, for appellant.

Theodore J. Furry, Kansas City, for respondent Propps.

Sylvester James, Jr., Kansas City, for respondent Frank.

Before NUGENT, P.J., and CLARK and FENNER, JJ.

FENNER, Judge.

Appellant, Robert E. Bryant, Jr., (hereinafter Bryant) appeals the trial court's judgment directing a verdict against him at the close of his evidence at trial. Bryant's cause of action arose out of a motor vehicle collision in Independence, Missouri. There were five vehicles involved in the accident. Bryant brought suit against the drivers of two other vehicles involved in the accident, Robert P. Frank and Donald E. Propps, alleging that they operated their vehicles at excessive speed, failed to keep a careful lookout and struck the rear of another vehicle. Bryant also sued Frank's employer, John Treff.

There were no diagrams of the scene of the accident in the record on appeal, but to assist the reader of this case in understanding the vehicles involved, their relative positions after the accident and the damage they suffered, this court offers the following sketch for illustrative purposes only:

```
 Front

Mansfield
( Olds
 Cutlass)

 Rear
```

```
 Front

 Bryant
 (Van)

 Rear
xxxxxxxxxxx
x  Rear  x
x        x
x Jones  x
x(Plymouthx
x Horizon)x
x        x
x  Front x
xxxxxxxxxxx
 Front

Propps
(Chevrolet
 pickup)

 Rear
```

```
N

W ——|—— E
|
S
```

```
xxxxxxxxxxxx
 Front

 Frank
(Pickup)

 Rear
```

1. xxxxxx indicates damage to the vehicle.

Bryant was operating a large cargo van, comparable to the cargo vans used by U.P.S., in the course of his employment with the Medical Center of Independence, on October 6, 1982. Bryant was traveling north on M–291 highway at approximately 11:00 a.m. Bryant was on a stretch of M–291 going downhill toward a bridge that passes over Truman Road. As Bryant drove down the hill he was required to stop for traffic delayed by work on the bridge. Although it had rained earlier in the day and the streets were still wet, Bryant testified that the pavement was not slick and that he had no difficulty stopping his van.

While Bryant was stopped waiting for traffic to clear a 1982 Plymouth Horizon, driven by Richard Jones, stopped three or four feet behind him. Jones testified that as he traveled down the hill he was able to see Bryant's van without any problem as well as the line of traffic stopped ahead of the van. Jones further testified that as he was coming to a stop he looked in his rear view mirror and saw the pickup driven by Frank turning onto M–291 from 23rd Street. As Jones came to a complete stop he again saw the pickup driven by Frank in his rear view mirror some 200 yards behind him. Nothing he saw at this time caused Jones any alarm. The next time Jones saw the Frank truck was when he heard the "squealing of brakes", checked his rear view mirror and saw the grillwork of Frank's truck. Jones then felt a heavy impact and threw himself down to the right in his seat. Jones did not see anything else happen but he did feel three more impacts with an interval between the second and the third impacts. Jones had been stopped facing north and after the last impact his car had been turned 180 degrees so that it was then facing south.

Frank testified that as he went down the hill, he saw a dozen or more cars backed up in the northbound lane of M–291 and that there were no obstructions blocking his view. When Frank saw the line of cars he slammed on his brakes and got over as far to the right as he could. The front of Frank's car hit the right rear corner of the Jones car causing it to spin around so that it faced the opposite direction. Frank ended up in a ditch to the right side of the road. Frank then saw Propps run into the front of Jones' car "pretty hard."

Bryant was first made aware of the accident when he felt a heavy blow to the rear of his van. The van was not knocked forward by this impact but a few seconds later Bryant felt a second impact which knocked his van forward into a car driven by a Miss Mansfield.

There was no evidence that anyone other than Frank and Propps hit the Jones car and no one actually saw the Jones car hit Bryant's van. However, after the accident the rear bumper of the Jones car was locked with the rear bumper of Bryant's van. The front end of Propps' truck was resting against the front end of Jones' car.

At the close of Bryant's evidence the defendants moved for a directed verdict arguing that Bryant failed to prove that they were negligent, failed to prove that he

sustained any damage and failed to prove that they caused any damage that he might have sustained. The trial court entered its judgment directing a verdict against Bryant. Bryant now appeals.

The standard to be applied in reviewing a directed verdict entered at the close of plaintiff's evidence requires that all of the evidence must be considered in the light most favorable to the plaintiff, accepting as true that which is not entirely unreasonable or opposed to physical law, and according to the plaintiff the benefit of all favorable inferences to be derived from the evidence and rejecting all unfavorable inferences. *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982). When challenged on appeal a verdict directed against the plaintiff will fail unless the facts in evidence and the legitimate inferences to be drawn from such facts are so strongly against the plaintiff as to leave no room for reasonable minds to differ. *Id.*

Bryant argues that the trial court's order was erroneous because he proved that the defendants were negligent by failing to keep a careful lookout and colliding with the vehicle behind him, causing that vehicle, to collide with the rear end of his van, and further that the negligence of the defendants was the proximate cause of his injuries.

■ In order to make a submissible case of failure to keep a careful lookout, it is sufficient to show that a defendant reasonably could have seen the danger of collision with plaintiff in time to have avoided the accident. *Watterson v. Portas*, 466 S.W.2d 129, 131 (Mo.App.1971); *Jenkins v. Jordan*, 593 S.W.2d 236, 238 (Mo.App.1979). Circumstantial evidence is sufficient to make a submissible case of failure to keep a careful lookout. *Jenkins, supra* at 238. Furthermore, whether a driver has failed to keep a careful lookout is usually a jury question. *Sample v. Witt*, 712 S.W.2d 394, 396 (Mo.App.1986).

Considered in the light most favorable to the plaintiff the evidence shows that from the point where Bryant was stopped there was an unobstructed view of at least one mile to the south, the direction from which

Frank and Propps were traveling. Jones, who was behind Bryant, testified that as he was going downhill and north on M–291, the same direction that Frank and Propps were traveling, he had no difficulty in seeing Bryant's van in time to stop. Jones was also able to see a long line of traffic stopped ahead of Bryant's van as he approached the location where the accident took place. Jones further testified that he first saw Frank's truck in his rear view mirror as he (Jones) was coming to a stop behind Bryant's van. When Jones first saw Frank's truck it was turning onto M–291 from 23rd Street.

■ The evidence, and the reasonable inferences to be drawn from the evidence, in the light most favorable to Bryant, establishes that both Frank and Propps had an unobstructed view of Jones' car and Bryant's van, as well as the traffic in front of Jones and Bryant, for at least one mile as they approached the scene of the accident. The evidence thus supports a finding that the defendants failed to keep a careful lookout.

Having made a submissible case against the defendants for failure to keep a careful lookout the plaintiff must further show that the negligence of the defendants was the proximate cause of his injury. *Harris v. Washington*, 654 S.W.2d 303, 306 (Mo. App.1983). Causation may be shown by circumstantial evidence. *Id.*

In regard to causation, the evidence, taken in the light most favorable to Bryant together with all inferences favorable to Bryant to be drawn from the evidence, supports a finding that Bryant's van was hit twice from behind. Bryant's van was hit once when Jones' car was knocked against the van after Jones was hit by Frank and once when Jones' car was again knocked against the van after Jones was hit by Propps.

■ Where concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to deter-

mine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tort-feasor, and the injured person may at his option institute suit for the resulting damages against any one or more of such tort-feasors separately, or against any number or all of them jointly. *Brantley v. Couch*, 383 S.W.2d 307, 310 (Mo.App.1964). The court in *Brantley* further held that this doctrine is particularly applicable in automobile chain collision cases.

The evidence in the case at bar establishes proximate cause as to the defendants even though it may be impossible to distinguish between the damage caused by Frank and by Propps.

The judgment of the trial court is reversed and the cause remanded for new trial against all defendants.

All concur.